UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


KIMBERLY SHEPARD,                        No. 2:09-cv-00843-MCE-DAD

        Plaintiff,

    v.                                   **MEMORANDUM AND ORDER**

UNITED HEALTHCARE INSURANCE
COMPANY,

        Defendant.

                        ----oo0oo----

    Through the present action, Plaintiff Kimberly Shepard
("Plaintiff") alleges that Defendant United Healthcare Insurance
Company ("Defendant") wrongfully, and in bad faith, denied
authorization for Plaintiff to be placed in a residential
treatment center ("RTC") for anorexia nervosa.  Plaintiff now
moves for partial summary judgment of her claim for breach of the
implied covenant of good faith and fair dealing.  Defendant has
also moved for summary judgment, or in the alternative, summary
adjudication, of Plaintiff's claims for breach of good faith and
fair dealing, punitive damages, attorney's fees, and injunctive
relief.

1

1   Both motions are brought pursuant to Federal Rule of Civil

2   Procedure 56.[1]  For the reasons set forth below, Plaintiff's

3   motion is denied, and Defendant's motion is granted in part and

4   denied in part.[2]

5

6                           **BACKGROUND**

7

8        Plaintiff alleges breach of contract and breach of good

9   faith and fair dealing arising out of her mental health insurance

10  policy ("the policy") with Defendant, which she obtained through

11  her employment as a registered nurse with UC Davis Medical

12  Center.  Plaintiff has a history of suffering from anorexia

13  nervosa, but had been stable for several years until March 2008

14  when she began to relapse after a miscarriage.

15       Plaintiff's eating disorder consisted of severe calorie

16  restriction and compulsive over-exercising.  In August 2008, she

17  was diagnosed with anorexia nervosa and sought treatment from the

18  Summit Intensive Outpatient Program in Sacramento ("Summit").

19  The Summit was designed for eating disorders where patients

20  attend three days a week for three hours at a time.

21  ///

22  ///

23  ///

24  ///

25

26       [1] Unless otherwise noted, all further references to Rule or
    Rules are to the Federal Rules of Civil Procedure.

27       [2] Because oral argument will not be of material assistance,
    the Court deemed this matter suitable for decision without oral
28  argument.  E.D. Cal. Local Rule 230(g).

                                2

1      Plaintiff was discharged from Summit after two weeks when

2  her doctors determined she needed a higher level of care. (Pl.'s

3  Undisp. Facts Nos. 38-39).  Upon discharge, Summit recommended

4  that Plaintiff continue in a day treatment or residential

5  treatment care ("RTC") program.  Plaintiff's psychiatrist,

6  Dr. Murrer, also recommended a higher level of care like RTC or a

7  partial hospitalization program ("PHP"), but at that time,

8  Plaintiff refused to attend either of these programs.

9      In September 2008, Plaintiff was placed on disability leave

10  from work by Dr. Murrer due to the severity of her eating

11  disorder.  Plaintiff continued to refuse a higher level of care

12  for anorexia until January 2009, when her husband purportedly

13  stated that he would seek a divorce and take their son if she did

14  not receive treatment in an RTC program.  Soon thereafter,

15  Plaintiff researched residential treatment facilities and chose

16  Monte Nido in Malibu, California because it specialized in

17  anorexia and exercise addictions, and was the closest available

18  center to Sacramento that accepted her insurance.  Plaintiff

19  added herself to the waiting list for admission to Monte Nido

20  around this time.

21      Monte Nido did not contact Defendant to obtain authorization

22  for Plaintiff's admission until February 26, 2009, due to

23  Defendant's policy that it will only consider a request for

24  authorization for residential treatment the day of, or shortly

25  before, admission. (Pl.'s Undisp. Facts Nos. 78, 79).  An agent

26  for Defendant entered case notes into the company's "Linx"

27  program based on his conversation with Monte Nido's assistant

28  clinical director, Karen Lewis.

1  (Pl.'s Undisp. Facts Nos. 79, 81, 91).  Those notes indicated
2  that Dr. Libus, a psychiatrist working part time for Defendant,
3  determined that Plaintiff did not meet the criteria for RTC, but
4  did meet the criteria for a PHP (Def.'s Undisp. Facts No. 24).
5  Dr. Libus therefore recommended that Plaintiff's request for
6  admission to Monte Nido be denied.

7       The parties dispute whether Dr. Libus relied solely on the
8  Linx case notes or if she additionally sought input from
9  Dr. Schneider, the Medical Director at Monte Nido (Pl.'s Resp. to
10 Def.'s Undisp. Facts No. 26; Def.'s Opp'n. to Pl.'s Undisp. Facts
11 No. 109) before making her recommendation.  Both parties do
12 agree, however, that Dr. Schneider at this point had not yet
13 examined Plaintiff and had no access to her medical records other
14 than a "medical clearance form." (Pl.'s Undisp. Facts Nos. 113-
15 115).  There is no consensus on whether Dr. Libus at this point
16 granted authorization for admission to a PHP at a facility close
17 to her home (Pl.'s Resp. to Def.'s Undisp. Facts No. 36).

18      Upon receipt of Defendant's denial letter, Monte Nido
19 requested an urgent appeal.  The appeal was assigned to Dr. Ross,
20 a psychiatrist under contract with an external review board,
21 Prest & Associates, which provides outside medical reviews for
22 Defendant.  Parties dispute whether Prest & Associates is an
23 "independent agency." (Pl.'s Resp. to Def.'s Undisp. Facts
24 No. 42).  Dr. Ross's review was based on information contained in
25 the Linx case notes, with Dr. Libus's additions, and his own
26 conversation with Dr. Schneider, who still had not examined
27 Plaintiff.  (Pl.'s Undisp. Facts Nos. 113, 145, 150).
28 ///

4

1  Based on this review, Dr. Ross agreed with Dr. Libus that
2  Plaintiff did not meet the level of care guidelines provided by
3  Defendant for residential treatment and that she did meet the
4  criteria for partial hospital mental health treatment.  Before
5  finalizing its denial of Plaintiff's appeal, Defendant's
6  Assistant Medical Director, Dr. Brown, reviewed Dr. Ross's report
7  along with the updated Linx case notes and approved the final
8  decision.

9      Throughout the process for both Plaintiff's request for
10  authorization and appeal, Drs. Libus, Ross, and Brown only relied
11  on previous reviewing physicians' notes, the initial case notes
12  based on a conversation with Monte Nido's clinical director, and
13  a conversation with Dr. Schneider who had not yet examined
14  Plaintiff.  (Pl.'s Undisp. Facts Nos. 81, 91, 107, 109, 110, 145,
15  166).  At no time did any of Defendant's reviewing doctors
16  request or have access to information about Plaintiff's treatment
17  or past medical records, or contact any of Plaintiff's treating
18  physicians.  (Pl.'s Undisp. Facts Nos. 82, 83, 147, 148).

19      Plaintiff learned of the denial for authorization to be
20  admitted to Monte Nido a day before she was scheduled to leave
21  for the facility.  She decided to pursue treatment anyway, and
22  Plaintiff's family subsequently paid for two months of treatment
23  at Monte Nido out-of-pocket.  Plaintiff filed the instant suit on
24  March 27, 2009, and on April 2, 2009, sought a Temporary
25  Restraining Order requiring Defendant to pay for Plaintiff's
26  treatment, which this Court denied.

27  ///

28  ///

1   Shortly thereafter, Plaintiff requested from the California
2   Department of Insurance ("DOI") an independent medical review in
3   hopes of overturning Defendant's denial of benefits.  The DOI
4   determined that Plaintiff did qualify for RTC level of care and
5   one month later, in response to this decision, Defendant duly
6   rendered the full amount of Plaintiff's two months of treatment
7   to Monte Nido.  Plaintiff left Monte Nido due to an inability to
8   continue paying for treatment, and did not learn of the DOI
9   decision until after her release.  Since then, Plaintiff has been
10  under treatment in the PHP program back at Summit in Sacramento
11  and has refused to return to Monte Nido.

12
13                            **STANDARD**
14
15   The Federal Rules of Civil Procedure provide for summary
16  judgment when "the pleadings, depositions, answers to
17  interrogatories, and admissions on file, together with
18  affidavits, if any, show that there is no genuine issue as to any
19  material fact and that the moving party is entitled to a judgment
20  as a matter of law."  Rule 56(c).  One of the principal purposes
21  of Rule 56 is to dispose of factually unsupported claims or
22  defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).
23  Under summary judgment practice, the moving party

24          always bears the initial responsibility of informing
            the district court of the basis for its motion, and
25          identifying those portions of 'the pleadings,
            depositions, answers to interrogatories, and admissions
26          on file together with the affidavits, if any,' which it
            believes demonstrate the absence of a genuine issue of
27          material fact.

28  ///

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Rule 56(c)).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  <u>See</u> Rule 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  <u>See</u> Rule 56(a), 56(c); <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-587 (1986); <u>First Nat'l Bank v. Cities Ser. Co.</u>, 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448 (1872)).

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Anderson, 477 U.S. at 255, See also Matsushita, 475 U.S. 587.

## ANALYSIS

**A.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

### 1.    Plaintiff's Motion: Failure to Investigate

Every contract imposes on each party an implied duty of good faith and fair dealing.  Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979).

8

This implied covenant imparts a duty on an insurer to investigate insurance claims, and the adequacy of that investigation is one of the most critical factors in determining whether an insurer acted in good faith.  Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc., 78 Cal. App. 4th 847, 879-80 (2000).  A claims investigation must thoroughly investigate possible bases that might support an insured's claim, and a trier of fact may find that an insurer acted unreasonably if it ignored evidence available which supports the claim.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007) (citing Egan, 24 Cal. 3d at 819).  Though ordinarily a question of fact, a determination regarding whether a defendant's actions in handling a claim were in good faith can be made as a matter of law where the evidence is undisputed and only one reasonable inference can be drawn from that evidence.  Chateau Chamberay v. Assoc. Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001).

Plaintiff alleges that Defendant failed to fully and fairly investigate her claim requesting authorization for admission to an RTC program.  She argues Defendant did not adequately investigate her claim because the physicians denying her benefits relied only on the Linx case notes whose sole source was a conversation with Monte Nido's assistant clinical director prior to Plaintiff's arrival at the clinic.  None of these physicians, or any other agents of Defendant, contacted Plaintiff's treating physicians nor requested her medical records.

///

///

///

1    Additionally, Plaintiff argues that neither of the experts
2    Defendant relied upon to deny her claim were qualified to make a
3    determination as to whether residential care was medically
4    necessary for Plaintiff.  Plaintiff states, and Defendant does
5    not dispute, that Dr. Libus had received no training from
6    Defendant regarding the handling of eating disorders and that
7    only two percent of her patients have eating disorders (Pl.'s
8    Undisp. Facts Nos. 102, 104).  Dr. Ross likewise had little
9    experience in Plaintiff's condition.  The only specific training
10   he had received was part of his residency training at UC Irvine
11   prior to 1992, and the hospitals at which he is Medical Director
12   have approximately one patient per year whose primary diagnosis
13   is an eating disorder.  (Pl.'s Undisp. Facts Nos. 142, 143).
14   Plaintiff asks this Court to hold that Defendant's actions
15   were in bad faith as a matter of law because this evidence is
16   undisputed and only one reasonable inference can be drawn from
17   the evidence.  While the evidence she cites to is undisputed by
18   Defendant, this Court cannot avoid weighing the credibility of
19   the experts on both sides in making a determination of bad faith.
20   This assessment is one reserved for a trier of fact; in ruling on
21   a motion for summary judgment or adjudication, this Court may not
22   judge the expert witness's credibility.  Anderson, 477 U.S. at
23   255.  Though Defendant's experts do not appear to have a
24   significant background in eating disorders, a reasonable jury
25   could find that such expertise is not required in order to make a
26   fair determination of Plaintiff's medical needs in light of other
27   evidence presented.
28   ///

Because a reasonable jury could find that Defendant acted in good faith by relying on the expertise of Drs. Libus and Ross to deny Plaintiff's claim, this Court declines to adjudicate this claim in favor of Plaintiff.  Plaintiff's Motion for Partial Summary Judgment for breach of good faith and fair dealing for failure to investigate is denied.

### 2.    Defendant's Motion: Genuine Dispute Doctrine

Courts may find that a defendant is not liable in bad faith as a matter of law where an insurer denies or delays the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability.  <u>Bosetti v. U.S. Life Ins. Co.</u>, 175 Cal. App. 4th 1208, 1237 (2009).  A defendant may invoke the "genuine dispute doctrine" as a basis for summarily adjudicating a bad faith claim when relying on the advice and opinions of independent experts.  <u>Chateau Chamberay Homeowners Ass'n.</u>, 90 Cal. App. 4th at 348 (citing <u>Fraley v. Allstate Ins. C.</u>, 81 Cal. App. 4th 1282, 1293 (2000)).  An insurer may not, however, insulate itself from bad faith by simply hiring an expert to create a genuine dispute; expert testimony will not automatically protect an insurer from bad faith claims.  <u>Id.</u>  In circumstances involving allegations that the insurer failed to conduct a thorough investigation, a claim for biased investigation should go to the jury to decide.  <u>Id.</u> at 348-49.

///

///

11

1    Defendant also requests summary adjudication of Plaintiff's

2    claim for breach of the implied covenant of good faith and fair

3    dealing for failing to fully investigate her claim.  Defendant

4    cites to the Genuine Dispute Doctrine in arguing that it was

5    entitled to rely on its own experts.  Defendant states that

6    though it came to an adverse benefits decision, a disagreement

7    about this decision is insufficient to bring a claim for bad

8    faith.  Defendant states that it relied on the independent

9    medical review of Dr. Ross, which it argues was reasonable as a

10   matter of law.  Dr. Ross is not employed by Defendant;

11   Plaintiff's case was referred to him by Prest & Associates, an

12   outside agency.  Defendant argues that these facts preclude a

13   claim for bad faith because such a claim requires Defendant to

14   have acted unreasonably, and reliance on an independent medical

15   opinion is reasonable as a matter of law.

16   Plaintiff directly disputes Defendant's assertion that Prest

17   & Associates is an independent agency.  (Pl.'s Resp. to Def.'s

18   Undisp. Facts No. 42).  Plaintiff cites to the deposition of Eric

19   Lawrence to argue that Prest & Associates is a "contracted review

20   board" that provides outside medical reviews for Defendant rather

21   than an independent agency.  Id.  Plaintiff further disputes

22   Defendant's contention that Dr. Ross does not have a financial

23   incentive to deny authorization requests.  Id. at No. 57.

24   Plaintiff cites to the deposition of Randy Ross to support its

25   argument, noting that Dr. Ross earns twenty percent of his total

26   income from Prest & Associates and is paid for every "standard"

27   peer-to-peer review he conducts.  Id.

28   ///

                                    12

Because a motion for summary judgment can only be granted where none of the material facts are in dispute, the Genuine Dispute Doctrine does not apply to Defendant here.  A genuine dispute exists only when Defendant relied on advice and opinions of <u>independent</u> experts.  This Court cannot make a determination as to the expert's independence where such independence is in dispute as the Court may not weigh the evidence each party has presented.  Because the parties dispute a fact material to the disposition of this claim for good faith and fair dealing, that claim must go to a trier of fact for adjudication.  Defendant's request for summary adjudication as to this claim will accordingly also be denied.

**B.   Punitive Damages**

The burden is on a plaintiff in its opposition to summary adjudication of a claim for punitive damages to produce clear and convincing evidence of malice, fraud or oppression.  <u>Baisch v. Allstate Ins. Co.</u>, 87 Cal. App. 4th 1112, 1121 (2001).  Evidence of inept, inefficient, negligent or unreasonable handling of a claim does not constitute proof of malice, oppression or fraud sufficient to justify punitive damages.  <u>Jackson v. Jackson</u>, 5 Cal. App. 4th 1350, 1354-55 (1992).  Some courts, however, have found failure to conduct an adequate investigation to be sufficient to support jury findings or withstand summary judgment on a punitive damages claim.

///

///

1  Harbison v. Am. Motorists Ins. Co., 636 F. Supp. 2d 1030, 1044

2  (E.D. Cal. 2009) (citing Amadeo v. Principal Mut. Life Ins. Co.,

3  290 F.3d 1152, 1165 (9th Cir. Cal. 2002)).  Moreover,

4  determinations related to assessment of punitive damages have

5  traditionally been left to the discretion of the jury.  Amadeo,

6  290 F.3d at 1165 (citing Egan, 24 Cal. 3d at 817).

7       Defendant argues that Plaintiff offers no facts which would

8  support a finding of malice, oppression, or fraud as is required

9  by California Civil Code § 3294 in making a punitive damages

10 claim.  Defendant emphasizes that it complied with the terms of

11 the policy, and did so in good faith.  Plaintiff responded with a

12 list of the facts it argues support a jury award for punitive

13 damages.  Many of these facts do support a jury finding of

14 inadequate investigation as they describe steps not taken by

15 Defendants in denying her claim.  Because, as stated above,

16 recent cases have found that a failure to conduct an adequate

17 investigation may yield punitive damages (see Harbison, 636 F.

18 Supp. 2d at 1044 (citing Amadeo 290 F.3d at 1165), this Court

19 denies Defendant's request for summary adjudication of

20 Plaintiff's claim for punitive damages.

21

22      **C.   Attorney's Fees**

23

24      California adheres to the American rule, which provides that

25 parties must pay their own attorney fees.  Cassim v. Allstate

26 Ins. Co., 33 Cal. 4th 780, 805 (2004); Cal. Code Civ. Proc.

27 § 1021.

28 ///

California does, however, provide for some enumerated exceptions to the American rule where attorney fees are provided for by contract, statute or common law. <u>Id.</u> Attorney fees reasonably incurred by insured to compel payment of benefits due under an insurance policy, for example, are recoverable in a bad faith action. <u>Id.</u> at 806 (citing <u>Brandt v. Superior Court</u>, 37 Cal. 3d 813, 817 (1985)).

As indicated above, this Court has already determined that Plaintiff's claim for breach of good faith and fair dealing must go to the jury. That determination applies equally to Plaintiff's claim since any entitlement to such fees hinges on a similar determination of bad faith. If a jury concludes that Defendant acted in bad faith, it may then legitimately be called to decide whether reimbursement of attorney fees is warranted for failure to provide the contracted-for benefits. Defendant's request for summary adjudication as to Plaintiff's prayer for attorney fees must also be denied.

**D.   Injunctive Relief**

Injunctive relief will be denied where the defendant voluntarily discontinues the wrongful conduct, and there is no reasonable probability that the past wrongs will recur. <u>Cal. Serv. Station Etc. Ass'n v. Union Oil Co.</u>, 232 Cal. App. 3d 44, 57 (1991) (citing <u>Phipps v. Saddleback Valley Unified School Dist.</u>, 204 Cal. App. 3d 1110, 1118 (1988); <u>Mallon v. City of Long Beach</u>, 164 Cal. App. 2d 178, 190 (1958) ("Injunctive power is not used as punishment for past acts...")).

15

1    In April 2009, Plaintiff sought a mandatory injunction to
2  require Defendant to pay out benefits which had been denied under
3  the policy for her RTC program so that she would not have to
4  leave Monte Nido.  Two months later, Defendant, responding to the
5  DOI decision qualifying Plaintiff for RTC, rendered payment in
6  full to Monte Nido, and Monte Nido, in turn, reimbursed Plaintiff
7  for the full amount.  (Def.'s Undisp. Facts Nos. 83, 85, 86).
8  Plaintiff agrees with Defendant that her request for injunctive
9  relief is moot.  In light of these facts, this Court finds that
10  Plaintiff's initial request for a mandatory judgment is no longer
11  a tenable claim.  Defendant's request for summary adjudication as
12  to Plaintiff's claim for injunctive relief will accordingly be
13  granted.

15                          **CONCLUSION**

17    As a matter of law, and for the reasons set forth above,
18  Plaintiff's motion for partial summary judgment (ECF No. 59) is
19  DENIED, and  Defendant's motion for summary judgment (ECF No. 63)
20  is GRANTED as to Plaintiff's claim for injunction, and DENIED as
21  to all other claims.
22    IT IS SO ORDERED.

23  Dated: February 18, 2011

26  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

16